# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

**For Prothonotary Use Only (Docket Number)**

**FEBRUARY 2023**

E-Filing Number: 2302026920

**001333**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| LISA BODNER | EXETER FINANCE, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 100 FELICITY DRIVE APT 404 PITTSBURGH PA 15237 | 2101 W JOHN CARPENTER FWY IRVING TX 75063 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| TRACY STANLEY | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 540 FILBERT ORIENT ROAD FAIRBANK PA 15435 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 1 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal ☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less | ☐ Arbitration | ☐ Mass Tort | ☐ Commerce | ☐ Settlement |
| ☒ More than $50,000.00 | ☐ Jury | ☐ Savings Action | ☐ Minor Court Appeal | ☐ Minors |
| | ☐ Non-Jury | ☐ Petition | ☐ Statutory Appeals | ☐ W/D/Survival |
| | ☒ Other: CLASS ACTION | | |

**CASE TYPE AND CODE**

C1 - CLASS ACTION

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

FILED
PRO PROTHY

FEB **14** 2023

S. RICE

**IS CASE SUBJECT TO COORDINATION ORDER?**

YES          NO

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: LISA BODNER , TRACY STANLEY

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| RICHARD SHENKAN | 6550 LAKESHORE ST. WEST BLOOMFIELD MI 48323 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (248)562-1320 | (888)769-1774 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 79800 | rshenkan@shenkanlaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *RICHARD SHENKAN* | Tuesday, February 14, 2023, 12:01 am |

FINAL COPY (Approved by the Prothonotary Clerk)

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

*Filed and Attested by the
Office of Judicial Records
14 FEB 2023 12:01 am
S. RICE*

| | | |
|---|---|---|
| LISA BODNAR and TRACY STANLEY, Individually on behalf of all others similarly situated, | ) ) ) | CIVIL ACTION |
| Plaintiffs, | ) ) | No. |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| EXETER FINANCE, LLC. f/k/a Exeter Finance Corp., | ) ) ) | |
| Defendant. | ) ) | Filed on behalf of Plaintiffs |

Counsel of Record for Plaintiffs:

Richard Shenkan
Shenkan Injury Lawyers, LLC.
Pa. Id. No. 79800
P.O. Box 7255
New Castle, PA 16107
T: (412) 716-5800
F: (888) 769-1774

**NOTICE TO PLEAD**

To Defendant: You are hereby notified to file a written response to the within pleading within twenty (20) days of service hereof or a judgment may be entered against you.

SHENKAN INJURY LAWYERS, LLC.
_____/s/ Richard Shenkan_____
Richard Shenkan

**JURY TRIAL DEMANDED ON ALL COUNTS. DAMAGES EXCEED JURISDICTIONAL LIMIT FOR ARBITRATION.**

| NOTICE TO DEFEND | AVISO |
|---|---|

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once.  If you do not have a lawyer or if you cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

Philadelphia Bar Association Lawyer
Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparecía escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que, si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisionar de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o flame por teléfono a la oficina cuya dirección se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociación De Licenciados
De Filadelfia
Servicio De Referencia E
Información Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333
TTY (215) 451-6197

SHENKAN INJURY LAWYERS, LLC.
/s/ Richard Shenkan
Richard Shenkan
*Attorney for Plaintiffs*

Case ID: 230201333

## CLASS ACTION COMPLAINT

Representative Plaintiffs Lisa Bodnar and Tracy Stanley, individually and on behalf of themselves and all others similarly situated, hereby file this Class Action Complaint against Exeter Finance LLC. f/k/a Exeter Finance Corp. ("Exeter"), and allege as follows:

## INTRODUCTION

1.  Plaintiffs bring this consumer class action on behalf of themselves and similarly situated consumers who have had their Motor Vehicle repossessed by Exeter in Pennsylvania and were subsequently sent a post-repossession consumer disclosure notice ("Notice of Repossession") and/or a post-sale explanation of deficiency notice ("Post-Sale Notice"). This action seeks both equitable and monetary relief to address, *inter alia*, Exeter's unlawful and deceptive standardized policies, procedures, and/or practices including its systematic failure to comply with the strict statutory requirements of the Uniform Commercial Code ("UCC"), independently, and in *pari materia* with the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA") regarding Notices of Repossession and Post-Sale Notices.

## PARTIES

2.  Representative Plaintiffs Lisa Bodner and Tracy Stanley are adult individuals residing at 100 Felicity Drive, Apt. 404, Pittsburgh, Pennsylvania, 15237 and 540 Filbert Orient Road, Fairbank, Pennsylvania 15435, respectively.

3.  Defendant Exeter Finance, LLC. is a corporation with its headquarters at 2101 W John Carpenter Fwy, Irving, TX 75063.  Exeter Finance, LLC was formerly known as Exeter Finance Corp.

Case ID: 230201333

4.    At all relevant times, Exeter was (or is) the assignee, holder, and/or servicing agent of loans secured by Plaintiffs' and putative Class Members' Motor Vehicles when Exeter sent (or caused to be sent) each of the subject statutory notices.

## JURISDICTION AND VENUE

5.    This Court is an appropriate forum, since Exeter regularly conducts business throughout Pennsylvania, including in Philadelphia County.

## DEFINITIONS

6.    **Borrower(s)**: The term "Borrower(s)" means a "Debtor" and "Obligor" as defined herein.

7.    **Debtor**: The term "Debtor" means a "person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor…" *See*, 13 Pa.C.S. §9102.

8.    **FTC Holder Rule Notice**: The term "FTC Holder Rule Notice" refers to the notice set forth in the Federal Trade Commission Rule 433, 16 C.F.R. Part 433 (the "Holder-in-Due-Course Regulations"). This provision is to be expressly included in all consumer credit contracts. (13 Pa. C.S.A. 9403, n. 5. The Notice states as follows:

  a.    For a consumer credit contract: "**NOTICE:** ANY HOLDER OF THIS **CONSUMER CREDIT CONTRACT** IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

  b.    For a purchase money loan: "**NOTICE:** ANY HOLDER OF THIS **CONSUMER CREDIT CONTRACT** IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE

4

Case ID: 230201333

PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER." (Emphasis added).

9. **Good Faith**: The term "Good Faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." 13 Pa.C.S. §1201. See "Obligation of Good Faith" below.

10. **Incur/Incurred**: The term "Incur" or "Incurred" means, to become legally obligated to pay for a good or service provided by a third-party. *See*, *Black's Law Dictionary* (11th ed. 2019) ("**incur** *vb.* (15c) To suffer or bring on oneself (a liability or expense"); *See also*, *Merriam-Webster's Collegiate Dictionary*, 11th Ed (defining incur as "to become liable or subject to"); West's Encyclopedia of American Law, edition 2. (2008)(defining incur as "[t]o become subject to and liable for; to have liabilities imposed by act or operation of law. Expenses are incurred, for example, when the legal obligation to pay them arises."

11. **Motor Vehicle**: Except as otherwise stated, the term "Motor Vehicle" means: a device in which, upon which or by which a person or property is or may be transported or drawn upon a public highway and including an automobile, a truck, a sports utility vehicle, a van, a minivan, a camper, a recreational vehicle, a motorcycle, or a truck. For purposes of this Complaint, the term is not intended to include a semitrailer or manufactured home.

12. **Notice(s) of Repossession**: The term "Notice(s) of Repossession" refers to a post-repossession consumer disclosure notice and has the same meaning as the term "notification of disposition" in 13 Pa.C.S. §§9611, 9613, and 9614 and as "notice of repossession" in 12 Pa.C.S. §6254. Exeter used at least one standardized, uniform form Notice of Repossession throughout the Class Period. The only information modified in the Notices of Repossession that are unique to

Case ID: 230201333

Plaintiffs and putative Class Members principally consists of amounts, personally identifiable information, unique data pertaining to the repossessed Motor Vehicle, the customer's loan information, and the date after which the disposition of the Motor Vehicle is to occur.

13. **Obligation of Good Faith**: The term "Obligation of Good Faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." 13 Pa.C.S. §1201(20).

14. **Obligor**: The term "Obligor" means a person that, with respect to an obligation secured by a security, is accountable in whole or in part for payment or other performance of the obligation. The term does not include any issuer or nominated person under a letter of credit. *See*, 13 Pa.C.S. §9102.

15. **Personal Property Fee**:  The term "Personal Property Fee" refers to a fee which Exeter and/or a Repossessor, Repossession Broker, and/or the auction selling the repossessed Motor Vehicle charged as a precondition to Redemption and/or Reinstatement.

16. **Post-Sale Notice**: The term "Post-Sale Notice" means a post-sale consumer disclosure notice which has the same meaning as the term "Explanation of Calculation of Surplus or Deficiency" in 13 Pa.C.S. §9616.  This term also refers to the "deficiency notice" as required by 12 Pa.C.S. §6261(d).

17. **Redeem/Redemption**:  Unless stated otherwise, the terms "Redeem" or "Redemption" mean a "buy back" of the repossessed Motor Vehicle by terminating the contract upon payment of the unpaid portion of the amount financed plus late charges and fees and expenses related to repossession.

18. **Redemption Amount**:  The term "Redemption Amount" is the amount a Borrower would be required to pay to buy back his/her repossessed Motor Vehicle.

Case ID: 230201333

19. **Redemption/Reinstatement Fee**: The term "Redemption/Reinstatement Fee" refers to a fee which Exeter and/or a third party Repossessor, Repossession Broker, and/or auction charged in connection with a Redemption and/or Reinstatement.

20. **Reinstatement**: The term "Reinstatement" refers to the procedure whereby the Borrower pays, *inter* alia, past due installments and (purported) costs/expenses Incurred incident to the repossession (in whole or in part), thereby permitting the Borrower to reacquire possession of the repossessed Motor Vehicle and to resume installment payments.

21. **Repossessor**: The term "Repossessor" means a person or entity that is hired by Exeter and/or its respective affiliates, or by a Repossession Broker (on behalf of Exeter), to repossess a Motor Vehicle by taking actual physical possession of it.

22. **Repossession Broker**: The term "Repossession Broker" means a person or entity that is hired by Exeter to arrange a repossession of a Motor Vehicle on behalf of Exeter by contracting with a Repossessor to repossess a Motor Vehicle. Repossession Brokers are also known as "repossession forwarders."

23. **Storage Fee**: The term "Storage Fee" refers to a fee which Exeter, a Repossessor, a Repossession Broker, and/or the auction charged in connection with the storage of the repossessed vehicle, generally assessed in connection with a Redemption or Reinstatement.

## FACTS

24. On or about April 1, 2019, Exeter, as secured creditor, repossessed or caused to be repossessed Lisa Bodner's Motor Vehicle.

25. On or about January 20, 2022, Exeter, as secured creditor, repossessed or caused to be repossessed Tracy Stanley's Motor Vehicle.

7

Case ID: 230201333

26. After each repossession, Exeter, or its agent sent or caused to be sent a Notice of Repossession addressed to Plaintiffs at their addresses in Pennsylvania. Copies of Plaintiffs' Notices of Repossession are attached as **Exhibits 1** and **2**.

27. The Notice of Repossession Exeter sent to Plaintiff Stanley listed "Repossession Expenses" (which is an itemized part of the redemption figure) of $0.00.[1] In this connection, the redemption amount was not accurate.

28. On the date of the Notice of Repossession, Exeter knew or reasonably should have known that the Repossession Expense was not $0.00 though failed to disclose same to Stanley and others similarly situated.

29. The Notice of Repossession Exeter sent to Plaintiff Bodnar contained an itemization for "Storage Expenses" in the amount of $50.00. In this connection, the redemption amount was similarly not accurate.

30. On the date of the Stanley's Notice of Repossession Exeter had a sweetheart deal with its repossessors or repossession brokers whereby it received approximately ten (10) free days of storage. Stanley's Notice of Repossession represented a bogus storage expense because, at the time of the Notice of Repossession, no expense for the storage of Stanley's repossessed vehicle was

---

[1] Either as part of the initial complaint (*Bodnar, et al., v. Exeter Finance LLC.*, Case ID 220802405 (Phil. CCP Aug. 19, 2020) and/or coupled with the service of the Complaint, Plaintiffs served a "Request for an Accounting" and a "Demand for a Document Preservation," **Exhibit 3** and **Exhibit 4**, respectively. Despite multiple requests to obtain this information, Exeter has yet to satisfy the Request for an Accounting pursuant to 13 Pa. C.S. §9210, including copies of any receipts and other satisfactory evidence of payment by Exeter relating to the retaking, storing, and repairing of the repossessed motor vehicles of Plaintiffs Tracy Bodnar and Lisa Stanley.

Case ID: 230201333

due and owing to Exeter.

31.    The Notice of Repossession of Bodnar and Stanley (as similarly situated class members) listed "Unpaid default charges due," in amounts which were not permitted by statute and/or the Retail Installment Sales Finance Contract, thereby, further rendering the redemption amount as of the date of the Notice of Repossession in-accurate.

32.    Exeter subsequently sold the Plaintiffs' repossessed Motor Vehicles.

33.    Exeter then sent a Post-Sale Notice addressed to Plaintiffs at their addresses in Pennsylvania.  Copies of Plaintiffs' Post-Sale Notices are attached as **Exhibits 5** and **6.**

34.    The Post-Sale Notice sent to each of the Plaintiffs failed to include the requisite language or in the proper order of the requisite language as required by 13 Pa. C.S. §9616.

35.    Exeter sent identical or substantially similar form notices to each Post-Sale Notice Class Member, with the same or substantially similar deficiencies.

**STATUTORY VIOLATIONS**

36.    Section 9611 of the UCC requires that "[a] secured party that disposes of collateral under section 9610 (relating to disposition of collateral after default) shall send to the persons specified in subsection (c) [debtor and secondary obligor] a **reasonable** authenticated notification of disposition [i.e., Notice of Repossession]." [Emphasis added]. 13 Pa.C.S. §9611(b).

37.    "The Pennsylvania Uniform Commercial Code ("UCC") does not define "reasonable" notice, but Pennsylvania courts define the term by looking to statutes governing vehicle finance and repossession. See, *Industrial Valley Bank and Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254, 1263 (Pa. Super. Ct. 1985)." *Cosgrove v. Citizens Auto. Finance, Inc.,* 2011 WL 3740809 (E.D. Pa. 2011)(applying the MVSFA to interpret reasonable standards). *See also*, *McCall v. Drive*

Case ID: 230201333

*Financial Services, L.P., et al.*, January Term, 5 (2006)(certifying a post-repossession disclosure notice class action stating "[t]he legislature, through the UCC and the MVSFA, requires secured parties to provide consumers with specific, detailed notices of repossession and sale."

38. The MVSFA states that a buyer is liable for costs incurred by the holder in retaking, storing, and repairing the Motor Vehicle so long as … "(2) the costs are ***actual***, necessary, and reasonable… [and] (3) the costs are supported by receipts or other satisfactory evidence of payment." 12 Pa. C.S.A. §6256.

39. In order to be a reasonable notice, the UCC requires compliance with, *inter alia*, the MVSFA [13 Pa. C.S.A. §9614 and n. 6], which also sets forth minimum content requirements for Notices of Repossession for consumer goods collateral. 12 Pa.C.S. §6254. These requirements include that the Notice provide "an itemized statement of the total amount required to redeem the motor vehicle in full by reinstatement or payment of the contract in full." 12 Pa.C.S. §6254(c)(2).

40. The Pennsylvania Superior Court has held that "[i]n a consumer goods transaction, before a secured party may dispose of or sell collateral following a debtor's default, the secured party **must send the debtor a notice setting forth**, *inter alia*, (1) whether the sale will be public or private; (2) the time, date and place at which the collateral will be sold (if sold at auction); (3) that the debtor is entitled to an accounting of the unpaid indebtedness; and, (4) **the [accurate] amount that must be paid to the secured party to Redeem the collateral**." *Cubler v. TruMark Fin. Credit Union*, 83 A.3d 235, 242, n. 1 (Pa. Super 2013).

41. Section 9614 of the UCC sets forth minimum statutory content requirements for Notices of Repossession for consumer goods collateral, including incorporating content requirements from Section 9613(1).

10

Case ID: 230201333

42. Section 9623 of the UCC states:

"…[t]o redeem the collateral, a person shall tender … (2) the <u>reasonable expenses and attorney fees described in section 9615(a)(1)(relating to application of proceed)</u>." (<u>Emphasis</u> added). 13 Pa.C.S. §9623(b)(2).

43. Section 9615(a)(1) of the UCC limits what a person has to pay to Redeem a repossessed Motor Vehicle to: "the reasonable expenses of retaking, holding, preparing for disposition, processing and disposing…<u>incurred by the secured party</u>." (Emphasis added).

44. The "safe harbor" notice language set forth in 13 Pa.C.S. §9614(3) also makes clear that only expenses **Incurred by the secured party** can be passed on to the vehicle owner:

"You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including ***our* expenses**." (Emphasis added).

**The Notices of Repossession Sent by Exeter**
**<u>Contained Inaccurate Expenses and an Inaccurate Redemption Amount</u>**

45. Accordingly, only expenses incurred by Exeter, the secured lender, can be itemized or otherwise included in the Notice of Repossession as part of the total amount required to Redeem.

46. The Notices of Repossession sent by Exeter to Plaintiffs and Class Members systematically contained inaccurate itemizations for "Repossession expenses" and for "Storage expenses incurred through date of this Notice," which resulted in an inaccurate disclosure of the Redemption Amount. Reason being, the itemizations either were not incurred, in whole nor in part, by Exeter as of the sending date bearing on the Notices of Repossession.

47. The Notices of Repossession sent to Plaintiffs and Class Members list as one item of the redemption amount – "Storage expenses incurred through date of this Notice (@ $25.00 per day):" generally followed by a fictitious, un-incurred amount.

48. As a matter of practice and policy, Exeter was not charged a storage expense for the

11

Case ID: 230201333

first ten (10) days the repossessed vehicle was at the repossessor(s) storage lot for Bodnar.

49. Bodnar's Notice of Repossession shows a storage expense of $50; however, the Post-Sale Notice (the disclosure after the sale of the vehicle sale) lists the storage expense of $0.00 – evidencing the overcharge in the redemption amount listed in the Notice of Repossession.

50. As a matter of practice and policy, however, Exeter included a storage expense in the Notices of Repossession in an amount of $25.00 per day for a period of approximately the first ten (10) days when the repossessed vehicle is stored at the repossessor(s) lot.

51. At all relevant times, this complimentary storage fee arrangement was uniform amongst repossession brokers/repossessors and vehicle auctions, though never disclosed to the consumers.

52. The Notices of Repossession did not disclose the time periods during which Exeter did not incur a storage expense.

53. Indeed, the listing of listing a storage expense of $25 per day as of the date of the Notice of Repossession was inaccurate as a matter of policy and practice; thereby inflating the redemption amount.

54. Exeter similarly listed an inaccurate amount for Repossession Expenses in the Notices of Repossession either as $0 or by including an unauthorized fee for a repossession broker, who either was not licensed or otherwise authorized to conduct business in Pennsylvania.

55. Additionally, at all relevant times, Exeter had contracts with Repossessors, Repossession Brokers, and/or Auctions, which detailed the amount that Exeter would Incur for the repossession fee, Storage Fee, Personal Property Fee, and/or Redemption/Reinstatement Fee, though did not disclose all of this information in the Notices of Repossession sent to Plaintiffs and

12

Case ID: 230201333

Class Members or disclosed inaccurate amount(s) Incurred for same. One or more of these fees/expenses did not reflect the actual, reasonable, and/or necessary amount incurred by Exeter as of the date the Notices of Repossession were sent.

56.    When Repossession Brokers invoice Exeter for a repossession they brokered, included in that charge is not only the Repossessor's cost of retaking the collateral (expressly permitted by statute), but the Repossession Broker's unauthorized, illegal fee(s)/charge(s) for merely facilitating the repossession. This fee/charge is not an "actual, necessary and reasonable" expense because, for example but without limitation, Exeter easily could have hired the Repossessors directly, reducing the proposed "expense" it falsely stated in the Notices of Repossession that it sent to the Representative Plaintiffs and Class Members, purportedly as a Repossession Expense.

57.    Exeter contracted with Repossession Brokers who, in turn, contracted/subcontracted with various Repossessors, throughout Pennsylvania to repossess Plaintiffs' and Class Members' vehicles and to charge the aforesaid illegal fees, to Exeter's Borrowers (either directly or via Exeter collecting the fees as a collection agent on behalf of the Repossessors, Repossession Brokers, and any Auctions who charged these unincurred fees). In the alternative, if these fees were incurred and were actual, necessary <u>and </u>reasonable.

58.    The Notices of Repossession sent, or caused to be sent, by Exeter during the class period failed to advise Borrowers of their ability to reinstate (or redeem by reinstatement) of the contract pursuant to Exeter's practice and/or policy to extend the privilege of reinstatement.

Case ID: 230201333

**The Notices of Repossession Sent by Exeter Violated
the UCC Because They Are (1) Not Reasonable, (2) Commercially
Unreasonable, and (3) a Violation of Exeter's Obligation of Good Faith**

59.    Exeter's Notices of Repossession violated the UCC, independently, and in *pari materia* with the MVSFA,[2] and thus are *per se* not "reasonable" (including "commercially unreasonable") in violation of the UCC – 13 Pa.C.S. §9611(b) and §9610(b).

60.    Further, Exeter has a duty to conduct itself in a commercially reasonable manner:

> Commercially reasonable disposition – Every aspect of a disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable. [Only] If commercially reasonable, a secured party may dispose of collateral by public or private proceedings…. (Emphasis added). 13 Pa.C.S. §9610(b)

61.    Good Faith requires "honesty in fact and the observance of reasonable commercial standards of fair dealing." 13 Pa.C.S. §1201(20). Regardless of whether there is ultimately a reinstatement of the loan, a redemption of the vehicle, or a sale of the repossessed vehicle, Exeter must fulfill its Obligation of Good Faith, which it violated in a variety of respects, including 13 Pa.C.S. §1103 and 13 Pa.C.S. §1304.[3]

---

[2] The MVSFA was originally found in Chapter 7 of Title 69 of Purdon's Statutes. In 2014, it was repealed and recodified in Chapter 62 of Title 12 of Pennsylvania Consolidated Statutes. Plaintiffs are not asserting a private right of action under the MVSFA. Rather, all claims presented herein are within the confines of the UCC (i.e., including Exeter's duty as a fiduciary and bailor and its obligation of good faith, to comply with the MVSFA, and in *pari materia* with the MVSFA).

[3] The Obligation of Good Faith under 13 Pa.C.S. §1304 is incorporated into Article 9 of the UCC via 13 Pa.C.S. §1102, which states "[t]his division [i.e., Article 1 of the UCC] applies to a transaction to the extent that it is governed by another division of this title." Additionally, 13 Pa.C.S. §1103(b), states: "[u]nless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy and other validating or invalidating cause, supplement its provisions."

14

Case ID: 230201333

62. As part of a policy, practice, and/or procedure and/or consistent with its promise in the retail installment contracts with class members, Exeter failed to state in its Notices of Repossession in Pennsylvania that it provided an option for reinstatement of the account or otherwise to provide such relief to class members in connection with repossessions.

### Exeter's Systematic Use of Unlicensed Repossession Brokers

63. Pursuant to 12 Pa.C.S. §6202, a "Collector-Repossessor" is one acting "as an independent contractor and not as a regular employee of an installment seller or a sales finance company, [that] collects payments on installment sale contracts or repossesses motor vehicles that are the subject of installment sale contracts." Anyone acting in the capacity of a principal, employee, agent, *or broker* of a Collector-Repossessor must be licensed in Pennsylvania. 12 Pa.C.S. §6211.

64. Throughout the Class Period, Exeter arranged for repossessions through numerous Repossession Brokers. These Repossession Brokers acted as "brokers" of Repossessors which are required to be licensed pursuant to 12 Pa.C.S. §6202 and 12 Pa.C.S. §6211. Upon information and belief, Exeter routinely employed Repossession Brokers to repossess Class Members' Motor Vehicles who were not properly licensed in Pennsylvania and were not otherwise qualified to conduct business in Pennsylvania.

65. At all relevant times, Exeter knew or should have reasonably known that the Repossession Brokers it used were not were properly licensed in Pennsylvania or otherwise permitted to perform business in Pennsylvania though failed to take reasonable steps to ascertain this information and/or prohibit their involvement in connection with the Class Members' repossessions.

Case ID: 230201333

66. It was commercially unreasonable in violation of 13 Pa.C.S. §9610(b) for Exeter to use Repossession Brokers that were not were properly licensed in Pennsylvania pursuant to 12 Pa.C.S. §6202 and 12 Pa.C.S. §6211.

67. Because these repossession brokers were unlicensed, and because these charges were not permitted by 12 Pa.C.S. §6256, any charge or invoice by them, and any receipt of payment by them, in relation to the subject repossessions and remarketing of the repossessed vehicles, are illegal and void, and must be extinguished. Notwithstanding the foregoing, Exeter employed these unlicensed repossessors to repossess Motor Vehicles and passed along these inflated, illegal hidden charges to Plaintiffs and Class Members.

## Improper Certifications to PennDOT

68. For Class members who did not redeem their vehicle, Exeter or its agent submitted a Pennsylvania Department of Transportation MV-217A form ("retitling forms"), to obtain a new title to each repossessed vehicle.

69. In executing and submitting a retitling form, Exeter (directly or through its authorized agent) routinely certified that it had "complied with all applicable laws and regulations of Pennsylvania" (MV-217A), even though it had not, as set forth in this Complaint.

70. Exeter regularly transported repossessed vehicles, within the fifteen (15) day period in which customers have the absolute right to redeem their vehicle, to other states or excessive distances for storage and/or sale. This caused excessive transportation and other unnecessary that were not actual, necessary, and/or reasonable in violation of the UCC independently and in *pari materia* with the MVSFA, in violation of its Obligation of Good Faith, and/or its fiduciary duty/bailor duties.

Case ID: 230201333

**The Post-Sale Notices Sent to Plaintiffs and Class Members Violated
the UCC Independently, and/or the UCC in *Pari Materia* with the MVSFA**

71.   Exeter listed amounts for "Costs of retaking the Vehicle" in the Post-Sale Notices that were substantially higher than the typical repossession fee in the Motor Vehicle Repossession market.

72.   The Post-Sale Notices sent to Plaintiffs and Class Members listed/assessed expenses, including "Repossession Fees", "Storage Fees", "Sale Fees", "Other Fees", "Repossession Expense", "Storage Expense", and "Other Expense", that were inaccurate and/or not actually Incurred by Exeter, and/or were excessive, not necessary, and/or not reasonable and/or otherwise improper.

73.   The Post-Sale Notices sent by Exeter failed to itemize, or failed to accurately itemize, the "Repossession Fees", "Sale Fees", "Other Fees", and/or "Other Expense."

74.   The Post-Sale Notices sent by Exeter included the purported amount for "Storage Fees" in the amount for "Other Fees" or "Other Expense", which was an inaccurate itemization.

75.   The Post-Sale Notices sent to Plaintiffs and Class Members listed/assessed "late fees" that were not permitted by law nor contract, were inaccurate and/or not actually incurred by the Borrowers, and/or were excessive, unnecessary, and unreasonable and/or were otherwise improper.

76.   As a matter of policy and practice, the Post-Sale Notices failed to include/itemize the refunds/rebates when it knew of the amounts of such refunds/rebates as of the date of the Post-Sale Notice.

77.   These violations were part of a pattern, and consistent with a practice of noncompliance.

17

Case ID: 230201333

**Improper and Excessive Late Fees**

78.    The MVSFA, 12 Pa.C.S. 6245, provides that under a contract for the sale of a motor vehicle, a late charge may not exceed 2% of the amount of the payment in arrears.

79.    Exeter charged Plaintiffs and Class Members late charges greater than 2% of the amount of the payment in arrears.

80.    This was a violation of the UCC independently, as it was a violation of the commercial reasonableness requirement of 13 Pa.C.S. §9610(b), 9611, and the UCC's Obligation of Good Faith.  This was also a violation of the UCC and MVSFA in *pari materia*.

**Breach of Contract**

81.    The retail installment sales contract entered into by Plaintiff Stanley and that was assigned to Exeter (**Exhibit 7**) states that if a payment is more than 10 days late, the buyer will be charged "5% of the part of the payment that is late."

82.    The retail installment sales contract entered into by Plaintiff Bodnar and that was assigned to Exeter (**Exhibit 8**) states that if a payment is more than 10 days late, the buyer will be charged a late charge of "2% of the part of the payment that is late", for non-commercial Motor Vehicles.

83.    As a matter of uniform policy and practice, Exeter charged Plaintiffs and Class Members late fees greater than the late fee amount provided for in their respective retail installment sales contracts.

**DAMAGES**

84.  13 Pa.C.S. §9625(c)(2) allows consumer Borrowers such as Plaintiffs (and members of the putative class) to recover statutory damages of not less than the credit service charge (finance

18

Case ID: 230201333

charge) plus 10% of the principal amount of the obligation (amount financed) because Exeter "failed to comply with this chapter." These figures are readily determinable simply by a review of each Class Member's retail installment sales contract.

85.    The Official Comments to the UCC are entitled to great weight. Comment 4 to Section 9625 makes clear that these minimum statutory damages are intended to establish a secured party's liability for violations of, *inter alia*, the notice provisions in consumer goods transactions, and do not require any actual damages in order for a consumer to bring a claim for statutory damages. That Comment states in pertinent part:

> 4. **Minimum Damages in Consumer-Goods Transactions.** Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted. Official Comment to §9625(c)(2).

86.    Plaintiffs and Class Members in the Notice of Repossession Class seek minimum statutory damages pursuant to 13 Pa.C.S. §9625(c)(2).

87.    Plaintiffs and Class Members in the Post-Sale Notice Class seek minimum statutory damages of $500 pursuant to 13 Pa.C.S. §9625(e)(5).

88.    Plaintiffs request that the Court permanently restrain collection of the purported deficiency balances on Plaintiffs' and putative Class Members' subject auto loan accounts, pursuant to 13 Pa.C.S. §9625(a).

89.    Further, Plaintiffs ask for declaratory and equitable relief as set forth in the Request for Relief below pursuant to 13 Pa.C.S. §1103(b), which states: "[u]nless displaced by the particular provisions of this title, the principles of law **and equity** … supplement its provisions."

Case ID: 230201333

## CLASS ALLEGATIONS

90. Plaintiffs bring this action on their own behalf and on behalf of the Classes defined below pursuant to Pa.R.Civ.P. 1701, *et seq*.

91. Plaintiffs propose a "Notice of Repossession Class" defined as All Persons:

    a. Who entered into a retail installment sales contract ("RISC"), for the purchase of a Motor Vehicle, which contained an FTC Holder Rule Notice and/or a reference in the RISC that the Motor Vehicle was purchased for personal, family, household, or consumer use, which was assigned to Exeter; and,

    b. From whom Exeter, as secured party, repossessed or caused the Motor Vehicle to be repossessed in Pennsylvania; and,

    c. To whom Exeter sent a Notice of Repossession to a Pennsylvania address at any time on or between August 19, 2016 through the date of class certification, which:

        i. Which included an itemization of $0 for a "Repossession Expense" or included an undisclosed amount as part of the Repossession Expense for the payment of a repossession broker who did not hold a license as a collector-repossessor pursuant to 12 Pa. C.S. §6211(a);

        ii. Which included an itemization for "Storage Expenses: (incurred through date of this notice @ $25.00 per day);"

        iii. Which included an itemization for "Unpaid default charges due" in an amount in excess of two (2%) of the amount in arrears as of the date of the Notice of Repossession;

        iv. Was substantially similar (other than personal information and amounts) to the Notices of Repossession attached as Exhibits 1 and 2 to this Complaint;

        v. Failed to disclose the time-period when Exeter would incur a storage expense from the date of the Notice of Repossession through the date of the sale; and/or,

        vi. Failed to state that the Borrower had a right to reinstate the contract; or,

    d. Who were not sent any Notice of Repossession.

20

Case ID: 230201333

92.  Plaintiffs propose a National Post-Sale Notice class defined as All Persons:

   a.  Who entered into a retail installment sales contract ("RISC"), for the purchase of a Motor Vehicle, which contained an FTC Holder Rule Notice and/or a reference in the RISC that the Motor Vehicle was purchased for personal, family, household, or consumer use, which was assigned to Exeter; and,

   b.  From whom Exeter, as secured party, repossessed or caused the Motor Vehicle to be repossessed; and,

   c.  To whom Exeter sent a Post-Sale Notice which:

      i.  Stated an itemization for "Other Expense" or "Other Fees" greater than $0; and/or,

      ii.  Was substantially similar (other than personal information) to either of the Post-Sale Notices attached as **Exhibits 5** or **Exhibit 6** to this Complaint; and/or,

      iii.  Who were not sent a Post-Sale Notice.

93.  Plaintiffs propose Pennsylvania Post-Sale Notice class defined as All Persons who were sent a Post-Sale Notice to a Pennsylvania address which:

      i.  Stated a Repossession Expense which included an undisclosed amount as part of the Repossession Expense for the payment of a repossession broker who did not hold a license as a collector-repossessor pursuant to 12 Pa. C.S. §6211(a); or,

      ii.  Stated an itemization for "Late Fees" in excess of two (2%) of the amount in arrears.

94.  Plaintiffs propose a Breach of Contract Class defined as All persons throughout the United States:

   a.  Who entered into a retail installment sales contract ("RISC") for the purchase of a Motor Vehicle, which contained an FTC Holder Rule Notice and/or a reference in the RISC that the Motor Vehicle was purchased for personal, family, household, or consumer use, which was assigned to Exeter; and,

   b.  To whom Exeter charged and recovered a late fee which exceeded the maximum late fee as permitted by the RISC.

21

Case ID: 230201333

95.    In an effort to assess the benefit of early settlement discussions, the parties to this litigation executed a Tolling Agreement on September 16, 2022, which tolled statutes of limitations "with respect to the claims asserted in the Class Action, or any amended claims that a court of competent jurisdiction determines relate back thereto" beginning on August 19, 2022 and ending ninety days from September 16, 2022, which subsequently was extended through and including February 13, 2023.

96.    Plaintiffs reserve the right to amend these class definitions after discovery.

97.    These classes are believed to be in excess of forty (40) persons; however, the exact number of all Class Members is unknown to the Plaintiffs and their counsel but can be determined from Exeter's business records. The size of these classes, and any trial, would be readily manageable.

98.    There are questions of law or fact common to the classes which predominate. These include, though are not limited to, the following questions:

   a.  Whether Exeter held a security interest in the Class Members' repossessed Motor Vehicles;

   b.  Whether Exeter or its agents repossessed the financed Motor Vehicle or ordered it to be repossessed;

   c.  Whether Exeter utilized form template Notices of Repossession which it sent which contained an itemization of a Storage Expense greater than $0;

   d.  The contractual damages in the breach of contract class and whether Exeter systematically breached retail installment sales contracts; and,

   e.  The minimum statutory damages for each Class Member in the Notice of Repossession Class.

99.    Exeter has acted or refused to act on grounds generally applicable to the (putative) classes, thereby making final relief appropriate with respect to the classes.

22

Case ID: 230201333

100.    Plaintiffs and the Class Members have substantive claims that are similar, if not identical, in all material respects, deriving from written form documents, and will require proof of the same kind and application of the same law.

101.    The Plaintiffs' claims are typical of those of the classes. All are based on the same factual and/or legal theories. Exeter was the secured creditor on Plaintiffs' and Class Members' consumer vehicle retail installment sales contracts. Exeter declared a default on all Plaintiffs' and Class Members' loans and caused their Motor Vehicles to be repossessed. Exeter failed to send notices after disposition of their Motor Vehicles as statutorily required.

102. Plaintiffs and Class Members are entitled to statutory minimum damages and equitable relief.

103. Plaintiffs will fairly and adequately represent and protect the interests of the classes.

104. The Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

105. Plaintiffs have no conflict with Class Members in the maintenance of this action, and their respective claims are identical to or at least typical of claims of the Class Members.

106. Because most Class Members either do not know that their rights have been violated, could not economically justify the effort and expense required to litigate their individual claims, or have little interest in or ability to prosecute an individual action, due to the complexity of the issues involved in this litigation, a class action is the most practical proceeding in which they can recover.

Case ID: 230201333

107. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable. This class action represents the most fair and efficient method of adjudicating this controversy.

108. There are no unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Statutory damages may be calculated with mathematical precision.

109. The questions of law and fact common to the classes predominate over any questions affecting only individual members.

110. If each of the Class Members were forced to bring individual suits, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties. A class action will serve the goals of judicial economy and ensure uniformity of decision.

<u>**COUNT 1**</u>
<u>**NOTICE OF REPOSSESSION CLASS**</u>

111. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

112. The actions and omissions by Exeter regarding violated the UCC and other statutes, including the MVSFA, and/or breached its fiduciary and bailor duties that it owed to Plaintiffs and Class Members, including but not limited to the following particulars:

      a.  Listing/assessing an expense(s) (e.g., "Repossession expenses", "Storage expenses incurred through date of this notice") in the Notices of Repossession which were not actual, necessary, and/or reasonable and/or were not supported by receipts or other satisfactory evidence of payment by Exeter, and/or were not Incurred by Exeter at the time the Notices of Repossession were sent and/or thereafter, and/or failing to disclose all fees and/or expenses, resulting in an inaccurate amount to Redeem and/or contract reinstatement, in violation of, *inter alia,* the UCC, including but not limited to, 13 Pa.C.S. §§9610, 9611, 9614, 9615(a)(1) and/or

24

Case ID: 230201333

9623(b)(2), independently, and/or in *pari materia* with, *inter alia,* 12 Pa.C.S. §§6254(c)(2) and/or 6256, and *Cubler v. TruMark Fin. Credit Union*, 83 A.3d 235, 242, n. 1 (Pa. Super 2013);

b.  Listing/assessing "default charges" or "late fees" in the Notices of Repossession that were not actual, necessary, or reasonable, were not permitted by law or contract, were inaccurate and excessive, and/or were otherwise improper, in violation of, *inter alia,* the UCC, including but not limited to, 13 Pa.C.S. §§9610, 9611, 9614, 9615(a)(1) and/or 9623(b)(2), independently, and/or in *pari materia* with, *inter alia,* 12 Pa.C.S. §§6254(c)(2) and/or 6256;

c.  Failing to accurately disclose the time period when Exeter was charged for a storage expense;

d.  Failing to accurately state the redemption amount as of the date of the Notice of Repossession;

e.  Assessing Class Members Storage Fees, repossession expenses, Personal Property Fees and/or Redemption/Reinstatement Fees that were not Incurred by Exeter or, if Incurred, Exeter acted solely as a collection agent for the repossessor, repossession broker, and/or auction; and/or improperly assessing and failing to disclose Repossession Broker fees/expenses. These practices violated the UCC, independently, and in *pari materia* with the MVSFA, including but not limited to, 13 Pa.C.S. §§9610, 9611, 9614, 9615(a)(1) and 9623(b)(2), and 12 Pa.C.S. §6256; See also, the CPFB consent decree, incorporated herein, with Nissan pronouncing the deceptive practice of charging Borrowers personal property fees. See, *In the Matter of: Nissan Motor Acceptance Corporation*, Consent Decree, File No. 2020-BCFP-0017 (Bureau of Consumer Financial Protection). cfpb_nissan-motor-acceptance-corporation_consent-order_2020-10.pdf;

f.  Failing to send a separate, separately addressed Notice of Repossession in violation of, *inter alia,* the UCC, including but not limited to, 13 Pa.C.S. §§9610, 9611, 9614, 9615(a)(1) and/or 9623(b)(2), independently, and/or in *pari materia* with, *inter alia,* 12 Pa.C.S. §§6254(c)(2) and/or 6256.

g.  Failing to advise Borrowers in the Notices of Repossession of their respective option to reinstate the contract pursuant to Exeter's policy to extend the privilege of reinstatement, in violation of UCC, including but not limited to, 13 Pa.C.S. §§9610, 9611, independently, and/or in *pari materia* with, *inter alia,* 12 Pa.C.S. §6254(c)(1).

Case ID: 230201333

h.  Breaching its Obligation of Good Faith in violation of statutes, including but not limited to 13 Pa.C.S. §1304, and/or the common law;

i.  Unnecessarily increasing transportation and sale-related expenses and/or unnecessarily transferring the financial burden onto borrowers to travel excessive distances to retrieve their personal possessions and/or to recover their repossessed Motor Vehicles;

j.  Collecting post-repossession payments from Class Members towards deficiencies that were not owed and imposing charges which are not permitted by statute or are otherwise unreasonable;

k.  Submitting inaccurate and/or adverse credit information about Class Members to credit bureaus which include illegal fees/expenses, and/or improper deficiency balance amounts;

l.  Hiring and imposing fees and costs for Exeter's use of Repossession Brokers who either were not licensed in Pennsylvania to repossess vehicles or broker repossessions (e.g., 12 Pa. C.S. §6202, §6211) or had otherwise not complied with Pennsylvania statute(s) permitting the Repossession Broker to conduct business within Pennsylvania (e.g., 15 Pa.C.S. §412) and/or their services were otherwise not permitted by contract, regulation, and/or statute. By imposing such "expenses" which were not actual, reasonable, and necessary, Exeter ratified such illegal conduct and improperly assessed such fees/expenses. These practices resulted in the violation of other statutes, laws, and/or regulations, including 18 Pa.C.S. §4911(a)(1) and (2); 12 U.S.C. §5531, §5536(a), and §5481(15)(A)(x) of the Consumer Financial Protection Act, the Pa. Fair Credit Extension Uniformity Act, and the Pa. Uniform Trade Practices and Consumer Protection Law;[4]

m.  Submitting MV-217A forms to PennDOT which included false certifications, stating that Exeter complied with all statutes and regulations when, in fact, it did not do so [(also in violation of 18 Pa.C.S. §4911(a)(1)];

n.  Failing to return redeemed collateral to the Borrowers' County of residence or the county where the vehicle was purchased or repossessed, in violation of UCC, including but not limited to, 13 Pa.C.S. §§9610, 9611, independently, and/or in *pari materia* with, *inter alia,* 12 Pa. C.S. §6259(c)(2));

---

[4] The remedies of these statutes, to the extent such exist, are <u>not</u> sought in this Complaint. Rather, Exeter's violations of these statutes are evidence of Exeter's "unreasonable" Notice of Repossession, commercially unreasonable conduct, breach of its Obligation of Good Faith, breach of its fiduciary/bailor duties, and/or breach of other statutes and/or common law duties.

Case ID: 230201333

o.  As Exeter had possession, custody, and/or control of Class Member's repossessed Motor vehicles, it breached its fiduciary duty and/or a bailor's duty towards Plaintiffs and the putative Class Members by systematically mis-stating fees, expenses, and redemption amounts in the Notices of Repossession; and,

p.  Otherwise violating the UCC, independently, and/or the UCC and MVSFA in *pari materia*; and/or, otherwise failing to proceed in a commercially reasonable manner, in violation of its Obligation of Good Faith and/or its fiduciary duty/bailor duties, and the UCC, and/or in violation of other statutes, laws, and/or regulations.

113.  Violations of the MVSFA and/or other statutes, regulations, and laws are violations of the UCC, independently. This includes but is not limited to the commercial reasonableness requirement of 13 Pa.C.S. §9610(b) and the UCC's Obligation of Good Faith and fair dealing.

114. Exeter engaged in these above-referenced loan serving errors, including administrative loan activity, as a result of improper record keeping, billing, credit reporting or statements of credit worthiness. These errors were uniform and a matter of standardized policy, procedure, and/or practice. Despite Exeter's violations of law, Exeter caused negative credit reporting to be entered against Plaintiffs and Class members.

### COUNT 2
### POST-SALE NOTICE CLASSES (National and Pennsylvania)

115.  Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

116.  The Post-Sale Notices systematically included fees and/or expenses which were not actual, necessary, and/or reasonable, including excessive late fees. The Post-Sale Notices sent by Exeter failed to fully and/or accurately itemize fees and/or expenses associated with the repossession and/or sale of the Plaintiffs and Class Members repossessed Motor Vehicles in violation of, *inter alia,* 13 Pa.C.S. §9616, §9610(b), and/or §1304 and/or in *pari* materia with 12 Pa.C.S. §6261(d).

27

Case ID: 230201333

117. The Post-Sale Notices sent by Exeter failed to itemize, or failed to accurately itemize "Repossession Fees", "Sale Fees", "Other Fees", and "Other Expense"..

118. The Post-Sale Notices sent by Exeter included the purported amount for "Storage Fees" in the amount for "Other Fees" or "Other Expense", which was an inaccurate itemization.

119. These violations were part of a pattern and consistent with a practice of noncompliance.

## COUNT 3
## BREACH OF CONTRACT CLASS

120. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

121. As set forth above, Exeter charged Plaintiffs and Class Members late fees greater than the late fee amount provided for in their RISCs, thereby breaching the RISCs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, request that this Honorable Court:

A. Certify the requested classes and appoint the undersigned as class counsel;

B. Monetary damages pursuant to 13 Pa.C.S. §9625(c)(2), 13 Pa.C.S. §9625(e)(5) and the corollary UCC damages statutes for each state, and breach of contract damages on a per state basis;

C. Declaratory Relief

 1. Declare that Exeter violated one or more sections of the UCC, including 13 Pa.C.S. §§9610(b), 9611, 9614(1)(i) (incorporating §§9613(1)(iii), (iv), (v)), 9614(1)(ii), 9615(a)(1), 9616, and 9623(b)(2) for Pennsylvania class members and the corollary UCC sections for non-Pennsylvania class members;

 2. Declare that the statutory violations of the UCC and MVSFA as described herein (a) render the Notices of Repossession per se unreasonable in violation of 13 Pa.C.S. §9611(b); (b) render the Notices of Repossession *per se* commercially unreasonable in violation of 13

28

Case ID: 230201333

Pa.C.S. §9610(b) for Pennsylvania class members and the corollary UCC sections for non-Pennsylvania class members; and, (c) constitute a violation of Exeter's Obligation of Good Faith in violation of 13 Pa.C.S. §1304 for Pennsylvania class members and the corollary UCC section for non-Pennsylvania class members;

3. Declare that the disputed deficiency balances of Plaintiffs and Notice of Repossession Class Members are invalid and cannot be collected, as a matter of law pursuant to 13 Pa. C.S. §9625(a) and §1304;

4. Declare that any loan by which a Class Member borrowed funds to refinance a disputed deficiency balance is null and void and cannot be collected, as a matter of law;

5. Declare that any monies paid to Exeter post-repossession and/or post-sale by Class Members towards their purported deficiency balances must be returned; and,

6. Declare that, if Exeter fails to submit requests to Equifax, TransUnion, and Experian to remove the Class Members' credit tradelines pertaining to the subject loan and repossession or continues to submit adverse information to attach to the Class Members' credit reports pertaining to the subject loan and repossession, that such conduct violates the UCC and other statutes.

B. Injunctive and Equitable Relief

1. Pursuant to 13 Pa.C.S. §§1103(b) and 9625(a), impose a constructive trust on all ill-gotten proceeds; order an accounting of all such proceeds, and their expedited return, with interest, by ordering Exeter to disgorge all moneys received from any Class Member as a payment towards a disputed deficiency balance or as a payment towards a loan for a disputed deficiency balance, nullifying any such loan;

2. Enjoin the collection of any invalid and disputed deficiency balances pursuant to 13 Pa.C.S. §9625(a) and §1103(b) for Pennsylvania class members and the corollary UCC sections for non-Pennsylvania class members;

3. Temporarily and/or permanently enjoin the use of all statutorily non-compliant statutory notices and use of unlawful expenses/fees in connection with the disposition and/or redemption of a repossessed motor vehicle pursuant to 13 Pa.C.S. §9625(a) and §1103(b) for Pennsylvania class members and the corollary UCC sections for non-Pennsylvania class members;

29

4.  Refund monies paid by any putative Class Members towards the purported deficiency balances on their respective auto loan accounts, pursuant to 13 Pa.C.S. §9625(a) and §1103(b) for Pennsylvania class members and the corollary UCC sections for non-Pennsylvania class members;

5.  Order Exeter to immediately submit requests to Equifax, TransUnion, and Experian to remove the Class Members' credit tradelines pertaining to the subject loan and repossession or, at a minimum, to indicate that any deficiency balance is contested and disputed pursuant to 13 Pa.C.S. §9625(a) and §1103(b) for Pennsylvania class members and the corollary UCC sections for non-Pennsylvania class members.

C.  Grant such other and further relief as may be deemed just and proper.

Respectfully submitted,
Shenkan Injury Lawyers, LLC.
/s/ Richard Shenkan
Richard Shenkan
*Attorney for Plaintiff*

Case ID: 230201333

### VERIFICATION

We verify that the averments of fact made in the foregoing Class Action Complaint are true and correct and based upon my personal knowledge, information and belief. I understand that averments of fact are made subject to the penalties of 18 PA C.S. Section 4904 relating to unsworn falsification to authorities.

_Lisa Bodnar_
Lisa Bodnar

Case ID: 230201333

# EXHIBIT 1

Case ID: 230201333

**CONFIDENTIAL**



P.O. Box 166008 // Irving, TX 75016

| ABOUT YOUR ACCOUNT | |
|---|---|
| **Date of Notice:** | 04/02/2019 |
| **Contract ("Agreement") Date:** | 11/07/2016 |
| **"Vehicle" Year/Make/Model:** | 2013 GMC LIGH ACADIA-V6 |
| **Vehicle Identification Number:** | 1GKKVTKD1DJ140428 |
| **Account Number:** | 7014855 |

| QUESTIONS? | |
|---|---|
| ✆ 800-321-9637 | ⏱ **Hours (Central Time):** |
| ● www.exeterfinance.com | 7am - 9pm (M-F) |
| | 8am - 5pm (SAT) |

LISA BODNAR
116 sieber rd
PITTSBURGH, PA 15237-3733

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

### Notice of Repossession and Notice of our Plan to Sell Property

Dear LISA BODNAR,

We have your Vehicle because you broke promises in our Agreement. We will sell the Vehicle at the expiration of 15 days from the date we mail this notice (shown above) at a private sale sometime after 04/19/2019. A sale could include a lease or license.

The money we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the Vehicle back at any time (redeem it) before we sell it by paying us at our address listed above the total amounts itemized below PLUS any amounts incurred by us after the date of this Notice, at any time before we dispose of the Vehicle or enter into a contract for its disposition under applicable law. If you were in default 15 days or less at the time we repossessed the Vehicle, you must pay the unpaid balance, plus the amount of any accrued default charges, plus any other amount lawfully due under the Agreement, less a rebate of unearned finance charges. If you were in default more than 15 days before we repossessed the Vehicle, you will also have to pay the costs of retaking, repairing, repossessing, and storing the Vehicle.

As of the date of this notice, you can redeem the Vehicle by paying us the following:

| | |
|---|---|
| Unpaid balance: | $13,551.88 |
| Unpaid default charges due: | $116.71 |
| Repossession expenses: | $775.00 |
| Storage expenses incurred through date of this Notice (@ $25.00 per day): | $50.00 |
| Other: NSF/Dishonored Check Fees | $0.00 |
| Total required to redeem as of the date of this Notice | $14,493.59 |

**Please see the next page for important bankruptcy information.**

Revision Date | 12.4.2018

4851-4048-5890

EXETER-BODNAR-000049

Case ID: 230201333

0000007-0000020

**CONFIDENTIAL**

**QUESTIONS?**

☎ **800-321-9637**
● www.exeterfinance.com

🕐 **Hours (Central Time):**
7am - 9pm (M-F)
8am - 5pm (SAT)

You must also pay to us any payments or expenses that may become due or be incurred after the date of this Notice.

If you want us to explain to you in writing how we figured the amount that you owe us, you may call us at (800) 321-9637 or write us at the address above and request a written explanation.

If you need more information about the sale call us at (800) 321-9637 or write us at the above address.

The Vehicle is stored at: 378 Hunker Waltz Mill Road, New Stanton PA 15672. Any personal property we found in the Vehicle will be held by us for 30 days from the date set forth at the top of this Notice. This property will be held at the address listed above for these 30 days and may be redeemed between the hours of 9:00 am and 5:00 pm. Please be advised that any property we find that is not claimed within 30 days from the date of this Notice may be disposed of in any manner we choose.

Payment should be directed to and notice may be served upon Exeter Finance LLC at P.O. Box 166008, Irving, TX 75016. You may also contact Exeter Finance LLC to receive a full statement of your account.

We are sending this notice to the following other people who have an interest in the Vehicle, or who owe money under your Agreement:

None

Sincerely,

Exeter Finance LLC

**This communication is an attempt by Exeter Finance LLC to collect a debt, and any information received in response to this communication will be used for that purpose.**

**We may report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.**

**NOTICE:** If you are entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) the following applies to you: **THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT, ASSESS, OR RECOVER A CLAIM IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY.**

**Attention Servicemembers and Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting repossession under most circumstances during the servicemember's active duty service. Exeter Finance LLC will not repossess the property of a service member or his or her dependent during that time, unless pursuant either to a court order or a servicemember's written waiver. You can contact us toll-free at (800) 321-9637 if you have questions about your rights under SCRA.

Revision Date | 12.4.2018

4851-4048-5890



# EXHIBIT 2

Case ID: 230201333

**CONFIDENTIAL**



PO Box 166008
Irving TX, 75016
**Phone:** 800-321-9637
www.exeterfinance.com

Sent Via Certified Mail

January 21, 2022

TRACY STANLEY

PO BOX 3
FAIRBANK, PA 15435-0003

## NOTICE OF REPOSSESSION AND
## NOTICE OF OUR PLAN TO SELL PROPERTY

**Account Number:**                 7566292
**Contract Dated ("agreement"):**   06/02/2017
**Description of Collateral ("collateral"):**

| **Year:** 2017 | **Make:** KIA | **Model:** SPORTAGE | **VIN:** KNDPMCAC7H7242008 |
|---|---|---|---|

Dear TRACY STANLEY;          :          7021 2720 0002 6077 0845

This is formal notice that we have the collateral because you broke promises in our agreement. We intend to sell the collateral at the expiration of fifteen (15) days from 01/21/2022.

We will sell the collateral at a private sale sometime after 02/05/2022. A sale could include a lease or license.

The money we get from the sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference. If we get more money than you owe, you will get the extra money, unless we must pay it to someone else.

You have the right to redeem (get back) the collateral by paying the Total Redemption Amount, as shown below. The Total Redemption Amount consists of all obligations due under the agreement and not just past due payments. You can redeem the collateral at any time before we sell the collateral or enter into an agreement to dispose of it. As of the the date of this notice, you can redeem the collateral by paying us the following:

| | |
|---|---|
| Contract Balance: | $21,965.67 |
| (Includes Accrued Interest, which continues to accrue at $11.02 per day: $1,311.73) | |
| Late Fees: | $45.00 |
| "Repossession Expenses: | $0.00 |
| Repair costs: | $0.00 |
| Storage Expenses: | $0.00 |
| (incurred through date of this notice @ $25.00 per day)" | |
| Other Expenses: | $0.00 |
| Less Finance Charge Rebate: | ($0.00) |
| Total Redemption Amount: | $22,010.67 |

**SEE IMPORTANT CONSUMER NOTICES AT END OF LETTER**

**EXETER-STANLEY-000051**

Case ID: 230201333

**CONFIDENTIAL**

This amount may change based on charges incurred or payments received after Current Date . To learn the exact amount you must pay to redeem the collateral, call us at 800-321-9637. Payment should be directed to and notice may be served upon Exeter Finance LLC, PO BOX 650598, Dallas TX 75265-0598.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us at 800-321-9637 or write us at Exeter Finance LLC, PO BOX 166008, Irving, TX 75016 and request a written explanation. We will charge you $0.00 for the explanation if we sent you another written explanation of the amount you owe us within the last six (6) months.

In addition, at any time after the execution of the contract and within one (1) year after the termination of the contract, we are required by law to furnish to you upon request a full statement of the account showing detailed account information.  You can obtain one (1) copy of the account statement without charge; additional copies can be obtained upon request and after payment of a reasonable fee not to exceed the cost of production.  If you wish to receive a copy of this full statement of the account, please contact us at PO BOX 166008, Irving, TX 75016.

If you need more information about the sale, call us at 800-321-9637 or write us at Exeter Finance LLC, PO BOX 166008, Irving, TX 75016.

The collateral is stored at:

JP Recovery Inc
1300 New England Rd

West Mifflin, PA 15122
1111111111

Any personal property left in the repossessed collateral will be held for thirty (30) days from the date of mailing of this notice.  The personal property may be reclaimed within the thirty (30) day time period.  Thereafter the property may be disposed of in any manner we choose.

We are sending this notice to the following other people who have an interest in the collateral or who owe money under your agreement:  NONE

You are receiving this notice due to the legal requirements of the state where you originally signed the agreement and/or the state where you currently reside.

Sincerely,

Exeter Finance LLC
PO BOX 166008
Irving, TX 75016
800-321-9637

**IMPORTANT CONSUMER NOTICES**:

If you are entitled to the protections of the United States Bankruptcy Code regarding the subject matter of this letter, this communication is not an attempt to collect a debt from you personally in violation of the bankruptcy code but is for informational purposes only.

**This communication is an attempt by Exeter Finance LLC to collect a debt and any information received in response to this communication will be used for that purpose.**

Exeter Finance LLC can report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**Attention Servicemembers and Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting repossession under most circumstances during the servicemember's active duty service. Exeter Finance LLC will not repossess the property of a service member or his or her dependent during that time, unless pursuant either to a court order or a servicemember's written waiver. You can contact us toll-free at 800-321-9637 if you have questions about your rights under SCRA.

**EXETER-STANLEY-000052**

Case ID: 230201333

# EXHIBIT 3

Case ID: 230201333



P.O. Box 7255 New Castle, PA  16107
6550 Lakeshore St. West Bloomfield, MI  48323
Phone: (800) 601-0808 • Fax: (888) 769-1774
rshenkan@shenkanlaw.com

August 22, 2022

**VIA PERSONAL SERVICE WITH COMPLAINT**

Exeter Finance, LLC.
2102 W. John Carpenter Fwy.
Irving, TX 15435

RE: *Lisa Bodnar and Tracy Stanley, individually and on behalf of all others similarly situated v. Exeter Finance LLC. f/k/a Exeter Finance Corp.,* August Term 2022, No. 220802405 (Phila. CCP).

TO WHOM IT MAY CONCERN:

      Regarding the above-captioned Class Action Complaint, I am writing on behalf of this firm's clients Lisa Bodnar and Tracy Stanley and the putative classes. I respectfully request an accounting pursuant to 13 Pa. C.S. §9210 for all expenses incurred by Exeter in connection with Lisa Bodnar and Tracy Stanley's respective accounts, their repossessed vehicles, and the attendant repossession.

      Please provide me with a copy of all receipts, invoices, or other documentation which supports the imposition of **all expenses** associated with their account, repossessed vehicle, and repossessions. If this itemization cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this Request for an Accounting.  According to 12 Pa.C.S. §6256, debtors are "liable for costs incurred by the holder in retaking, storing, and repairing the motor vehicle" only **if**: …

      (1) The default exceeds 15 days at the time of repossession.
      (2) The costs are actual, necessary and reasonable, excluding repossession costs for services by an individual who is a regular full-time employee of the holder.
      (3) The costs are supported by receipts or other satisfactory evidence of payment.
      (4) The records of the holder show detailed information as to the nature and amount of each cost, the date of payment and the recipient of the payment.

Case ID: 230201333

Particularly, in the Notice of Repossession, Exeter included an itemization for "Storage expenses incurred through date of this Notice." Please provide me with the receipts, invoices, or other documentation which supports (or tends to support) this itemization.

Additionally, in the Post-Sale Notice, there is an itemization for "Late Fees." Please all documents which establish how Exeter determined the amount of late fees for Lisa Bodnar and Tracy Stanley, including any retail installment sales contract.

Moreover, in the Post-Sale Notice, Exeter itemizes "Other Expenses." Please also provide me with all documents which support these "other expenses" for Lisa Bodnar and Tracy Stanley.

I additional to these discrete handful of documents requested, for Lisa Bodnar and Tracy Stanley, please briefly explain how the amounts for these three figures described below were determined:

(1) the "Storage expenses incurred through date of this Notice" as listed in the Notices of Repossession;
(2) the amount of the respective "Late Fees" listed in these clients' Post-Sale Notices; and,
(3) the "Other Expenses" listed in these clients' Post-Sale Notices.

If there is a charge for this accounting, please let me know as this firm guarantees all reasonable fees and expenses associated with this request and, upon requested, will provide immediately payment in advance of your providing this information to me.

Pursuant to 13 Pa. C.S. §9210(b) and/or any applicable loan agreement, please respond to this request within fourteen (14) days of today.

Lastly, please allow this letter to serve as your notice that Lisa Bodnar and Tracy Stanley and the putative classes dispute the amount and existence of any deficiency balance that Exeter submitted to credit bureaus pursuant to, *inter alia*, 13 Pa. C.S. 9625(a) and the equitable relief sought (13 Pa. C.S. 1103). See the ad damnum clause of the attached lawsuit seeking, *inter alia*, the tradeline removal of the repossessed vehicle and deficiency balance.

While it is the undersigned's contention that Exeter should remove the challenged tradeline relating to any deficiency balance Exeter claims is due and owing, immediately and refrain from further submissions to mitigate its damages, Plaintiffs respectfully submit that Exeter should – at a minimum – immediately abate all collection activities and take all reasonable steps to ensure that any credit submissions relating to a deficiency balance are shown as disputed.

This request is also made pursuant to the Pennsylvania Rules of Civil Procedure and, as may become applicable, the Federal Rules of Civil Procedure.

Plaintiffs reserve all rights and waive none.

*End of Page.*

2

Case ID: 230201333

If you have any questions or concerns, please contact me right away. Thank you in advance for your immediate attention to this urgent matter.

Sincerely,
SHENKAN INJURY LAWYERS, LLC.
/s/ *Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiffs*

*Enclosure: Class Action Complaint and Letter Request to Preserve Documents*

Case ID: 230201333

# EXHIBIT 4

Case ID: 230201333



P.O. Box 7255 New Castle, PA  16107
6550 Lakeshore St. West Bloomfield, MI  48323
Phone: (800) 601-0808 • Fax: (888) 769-1774
rshenkan@shenkanlaw.com

August 22, 2022

**<u>URGENT</u>**

**<u>VIA PERSONAL SERVICE WITH COMPLAINT</u>**

Exeter Finance, LLC.
2102 W. John Carpenter Fwy
Irving, TX 15435

RE: *Lisa Bodnar and Tracy Stanley, individually and on behalf of all others similarly situated v. Exeter Finance LLC. f/k/a Exeter Finance Corp.,* August Term 2022, No. 220802405 (Phila. CCP).

TO WHOM IT MAY CONCERN:

Please find enclosed a copy of the Class Action Complaint against Exeter Finance, LLC. ("Exeter"). While we have yet to litigate with you, as we have litigated with others who have destroyed evidence pertaining to litigation, we have implemented a general practice to submit a document preservation notice together with the service of complaints regardless of the defendant. As such, Plaintiffs respectfully submits this demand for Exeter and its agents and third-party vendors to preserve all documents, including electronically stored information.

As used in this document, "you" and "yours" refers to Exeter, and its predecessors, successors, parents, subsidiaries, divisions or affiliates, and its respective offices, directors, agents, attorneys, accountants, employees, partners and other persons occupying similar positions or preforming similar functions, and each Defendant's third-party vendors, including but not limited to repossession forwarders/repossession brokers, repossessors, auctions, and repossession management/communication providers such as, by way of example only, AutoIMS, RDN, iRepo; Recovery Connect.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information (hereinafter "ESI" should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

1

Case ID: 230201333

- Digital Communications (e.g., e-mail, voice mail, instant messaging);
- Word processed documents (e.g., Word or WordPerfect documents and drafts);
- Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
- Accounting application Data (e.g., QuickBooks, Money, Peachtree data files);
- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
- Sound Recordings (e.g., .WAV and .MP# files);
- Video and Animation (e.g., .AVI and .MOV files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Calendar and Dairy Application Data (e.g., Outlook, Yahoo, blog tools);
- Online Access Data (e.g., Outlook PST, Yahoo, blog tools; online databases);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations)
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and,
- Back Up and Archival Files (e.g., Zip, .GHO)

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to reserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI. Potentially relevant evidence is not limited to Plaintiff's claims and loan account, but extends to the claims and auto loan accounts of the putative class members.

The demand that you reserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to the Federal Rules of Civil Procedure, you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably inaccessible must be preserved in the interim so as not to deprive the plaintiffs of their right to secure the evidence or the Court of its right to adjudicate the issue.

### A. Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI which pertains to or has any bearing (including ¶1-8 below) on the putative class time period of August 19, 2016 through and including class certification. You must promptly act to preserve any potentially relevant ESI created in the future relating to any of these matters as well. Potentially relevant ESI includes, but is not limited to information:

1. Regarding the events and causes of action described in Plaintiff's Class Action Complaint;
2. Regarding Your policies, practices, and/or procedures pertaining to redemption, loan reinstatement, repossession, and/or sale of repossessed vehicles.
3. Regarding Your Notice(s) of Repossession and Post-Sale Notices used at any time during the putative class period.

Case ID: 230201333

4. All documentation (including receipts, invoices, purchase order, checks, wire payments, and/or any other evidence which supports or tends to support the charge and/or payment of the expenses listed in Notices of Repossession, and/or fees itemized in either of these statutory notices.

5. Regarding any document evidencing how, when, and why the $300 Repossession Expense listed in the Notices of Repossession was determined, originated, and inserted into Notices of Repossession.

6. Your contractual relationship with any repossessor, repossession broker (aka forwarder), and auctions which pertained to (pertains to) any putative class members' repossessed vehicle or his/her/their auto loan.

7. Regarding Your expenses Regarding Your potential claim(s) and defense(s) to Plaintiff's Class Action Complaint;

8. Regarding all documentation (including ESI relating to policy, practice, and procedure) to establish how Exeter determined the "Late Fees" and "Other Expenses" for each putative class member in the Post-Sale Notice Class; and,

9. Regarding the auto loan accounts of putative class members.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of computers and other devises. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from Your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to reserve documents, things and other potentially relevant evidence.

**You must also instruct your agents and third-party vendors to also preserve all potentially relevant ESI in the aforesaid time period**.

### B. Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of you information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;

Case ID: 230201333

- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

### C. Guard Against Deletion

You should anticipate that your employees, officers or others may seek to hide, destroy or alter ESI and act to prevent or guard against such actions. Especially where company machines have been used for Internet access or personal communications, you should anticipate that users may seek to delete or destroy information they regard as personal, confidential or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This event occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

### D. Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, reimaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, on way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices of each of the persons named below and of each of the persons named below an of each person acting in the capacity of holding the job title named below, as well as each other person likely to have information pertaining to the instant action on their computer hard drive(s), demand is made that you immediately obtain, authenticate and preserve forensically qualified images of the hard drives in any computer system (including portable and home computers) used by that person during the period from May 2013 to today's date as well as recording and preserving the system time and date of each such computer.

Once obtained, each such forensically qualified image should be labeled to identify the date of acquisition, the person or entity acquiring the image and the system and medium from which it was obtained. **Each such image must be preserved without alteration.**

### E. Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift

Case ID: 230201333

ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### F. Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including delated content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### G. Servers

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to reserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If you question whether the preservation method you pursue is one that we will accept as sufficient, please call to discuss it.

### H. Home Systems, Laptops, Online Accounts and Other ESI Venues

Though we expect that you will act swiftly to preserve data on office workstations and servers, you should also determine if any home or portable systems may contain potentially relevant data. To the extent that officers, board members or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, you must preserve the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CD-R disks and the user's PDA, smart phone, voice mailbox or other forms of ESI storage.). Similarly, if employees, officers or board members used online or browser-based email accounts or services (such as AOL, Gmail, Yahoo Mail or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted and Archived Message forlders0 should be preserved.

### I. Ancillary Preservation

You must preserve documents and other items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like.

Case ID: 230201333

You must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals and license keys for applications required to access the ESI. You must preserve any cabling, drivers and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optional disk drive, in needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy or proprietary devices.

### J. Paper Preservation of ESI in Inadequate

As hard copies do not preserve electronic searchability or metadata, they are no an adequate substitute for, or cumulative or, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

### K. Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian, third-party vendor, or contractor who may have possession of potentially relevant ESI to reserve such ESI to full extent of your obligation to do so, and you must take reasonably steps to secure their compliance.

### L. System Sequestration or Forensically Sound Imaging

We suggest that, with respect to Defendant removing their ESI systems, media and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step. In the vent you deem it impractical to sequester systems, media and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictated that forensically sound imaging of the systems, media and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the present of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and suing tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all of the electronic evidence, including the so- called "unallocated clusters," holding deleted files.

### M. Preservation Protocols

We are desirous of working with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if You will furnish an inventory of the systems and media to be reserved. Else, if you will promptly disclose the preservation Protocol you intend to employ, perhaps we will promptly disclose and preservation protocol you intend to employ, perhaps we can

Case ID: 230201333

identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensic. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

### N.  Do Not Delay Preservation

I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted because of delay.

### O.  Confirmation of Compliance

In order to demonstrate compliance with your duty to preserve ESI, you must maintain a log of all alterations or deletions of data made to any ESI location, device or file indicating when the change was made, specifics of the content of the change, the reason for the change and who made the change. Any and all physical devices, hard drives, computer systems and other sources of ESI that contain relevant or potentially relevant data shall be listed on the chain of custody document indicating the location of the item, the custodian of the item and any unique identifying information for the item such as a model and serial number. All electronic data and ESI created after receipt of this letter that qualifies per the content of this letter for preservation shall be preserved in accordance with the steps outlined herein to ensure proper preservation. Compliance with this preservation request extends to all possible custodians, including employees, vendors, third parties, contractors and others who may be in possession of relevant or potentially relevant ESI, whether listed in this document or not. You shall forward a copy of this request to any such parties immediately.

Please confirm that you have taken the steps outlined in this letter preserve all documents, including all ESI, potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you have any questions or concerns, please do not hesitate to contact me. I look forward to working with you on this case. Thank you for your immediate attention to this matter.

Sincerely,
SHENKAN INJURY LAWYERS, LLC.
/s/ *Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiffs*

*Enclosure: Class Action Complaint and Letter Request for Accounting*

Case ID: 230201333

# EXHIBIT 5

Case ID: 230201333



P.O. Box 166008
Irving, TX 75016
(800) 321-9637

**CONFIDENTIAL**

June 4, 2019

LISA BODNAR
116 SIEDBERT RD
PITTSBURGH, PA 15237

Sent Via Certified Mail
9307 1100 1170 1001 2314 59

## Explanation of Calculation of Surplus or Deficiency

**ACCOUNT NUMBER:**          7014855

### Description of Collateral:

| Year: 2013 | Model: ACADIA-V6 | Make: GMC LIGH |
|---|---|---|
| VIN: 1GKKVTKD1DJ140428 | | Contract Date: 11/07/2016 |

Dear LISA BODNAR:

The above-referenced collateral was sold on 05/14/2019.  The proceeds of the sale have been applied as detailed below as of 5/30/2019.  If the application of the proceeds of the sale resulted in a surplus, we will return that amount to you unless we have to pay someone else with an interest in the collateral.  If the application of the proceeds of the sale resulted in a deficiency, you remain liable to us for this deficiency and must pay this amount in full upon receipt of this notice.

| | |
|---|---|
| Contract Balance as of 05/14/2019: | $13,551.88 |
| Plus late fees: | $116.71 |
| Subtotal: | $13,668.59 |
| Proceeds of Sale: | $8,000.00 |
| Outstanding balance following sale: | $5,668.59 |
| Plus other charges: | |
| Repossession Fees: | $775.00 |
| Storage Fees: | $0.00 |
| Sale Fees: | $242.00 |
| Legal Fees: | $0.00 |
| Other Fees: | $75.00 |
| Subtotal: | $1,092.00 |
| Less credit for unearned finance charge as of 5/30/2019: | ($0.00) |
| Less credit for cancelled insurance premiums as of 5/30/2019: | ($0.00) |
| Less other credit: | ($0.00) |
| Deficiency Balance as of 5/30/2019: | $6,760.59 |

(The checked box applies to you)

☒  Deficiency balance for which you are liable and for which demand is hereby made: $6,760.59
☐  Surplus balance to be remitted to you:
☐  Surplus balance paid to a subordinate party:
☐  No deficiency balance is owed because the debt was discharged in bankruptcy.

Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency.



**SEE IMPORTANT CONSUMER NOTICES AT END OF LETTER**



**EXETER-BODNAR-000054**

Case ID: 230201333

**CONFIDENTIAL**

Please write us at P.O. Box 166008, Irving, TX 75016 or call us at (800) 321-9637, Mon - Thu 7am - 9pm, Fri 7am - 5pm, or Sat 8am - 5pm (Central Time) if you have any questions regarding this notice.

Sincerely,

Exeter Finance LLC
P.O. Box 166008
Irving, TX 75016
(800) 321-9637

**IMPORTANT CONSUMER NOTICES**:

If you are entitled to the protections of the United States Bankruptcy Code regarding the subject matter of this letter, this communication is not an attempt to collect a debt from you personally in violation of the bankruptcy code but is for informational purposes only.

Exeter Finance LLC can report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

Attention Servicemembers and Dependents: The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting repossession under most circumstances during the servicemember's active duty service. Exeter Finance LLC will not repossess the property of a service member or his or her dependent during that time, unless pursuant either to a court order or a servicemember's written waiver. You can contact us toll-free at (800) 321-9637 if you have questions about your rights under SCRA.





Case ID: 230201333

**EXETER-BODNAR-000055**

# EXHIBIT 6

Case ID: 230201333



**CONFIDENTIAL**
Irving, TX 75016
Phone: 800-321-9637

Sent Via Certified Mail™
9307 1100 1170 1086 2644 34

March 11, 2022

TRACY STANLEY
PO BOX 3
FAIRBANK, PA 154350003

## EXPLANATION OF CALCULATION OF SURPLUS OR DEFICIENCY

**ACCOUNT NUMBER:**          7566292

**Description of Collateral:**

| Year: 2017 | Model: SPORTAGE | Make: KIA |
|---|---|---|
| VIN: KNDPMCAC7H7242008 | | Contract Date: 06/02/2017 |

Dear TRACY STANLEY:

This is formal notice that the above-referenced collateral was sold on 03/04/2022. The proceeds of the sale have been applied as detailed below as of 03/09/2022. If the application of the proceeds of the sale resulted in a surplus, we will return that amount to you unless we have to pay someone else with an interest in the collateral. If the application of the proceeds of the sale resulted in a deficiency, you remain liable to us for this deficiency and must pay this amount in full upon receipt of this notice.

| | | |
|---|---|---|
| Contract Balance as of 03/04/2022: | | $22,430.49 |
| Plus Late Fees: | + | $75.00 |
| **Subtotal:** | **=** | **$22,505.49** |
| Proceeds of Sale: | - | $17,200.00 |
| Outstanding Balance Following Sale: | = | $5,305.49 |
| Plus Other Charges | | |
| Repossession Expense: | + | $0.00 |
| Storage Expense: | + | $0.00 |
| Sale Expense: | + | $286.30 |
| Legal Fees: | + | $0.00 |
| Other Expense: | + | $337.50 |
| **Subtotal:** | **=** | **$623.80** |
| Less credit for unearned finance charge as of 03/09/2022: | - | $0.00 |
| Less credit for cancelled insurance premiums as of 03/09/2022: | - | $0.00 |
| Less other credit: | - | $0.00 |
| **Deficiency Balance as of 03/09/2022:** | **=** | **$5,929.29** |

(The checked box applies to you.)
☒ Deficiency balance for which you are liable and for which demand is hereby made: $5,929.29
☐ No deficiency balance is owed because the debt was discharged in bankruptcy.



**SEE IMPORTANT CONSUMER NOTICES AT END OF LETTER**



**EXETER-STANLEY-000076**

Case ID: 230201333

CONFIDENTIAL

Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency.

Please write us at PO BOX 166008, Irving, TX 75016 or call us at 800-321-9637, Mon - Fri 8AM - 7PM, or Sat 8AM - 5PM (Central Time) if you have any questions regarding this notice.

Sincerely,

Exeter Finance LLC
PO BOX 166008
Irving, TX 75016
800-321-9637

This is an attempt to collect a debt and any information obtained will be used for that purpose.

**IMPORTANT CONSUMER NOTICES**:

If you are entitled to the protections of the United States Bankruptcy Code regarding the subject matter of this letter, this communication is not an attempt to collect a debt from you personally in violation of the bankruptcy code but is for informational purposes only.

Exeter Finance LLC can report information about your Account to credit bureaus. Late payments, missed payments, or other defaults on your Account may be reflected in your credit report.

**Attention Servicemembers and Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including prohibiting repossession under most circumstances during the servicemember's active duty service. Exeter Finance LLC will not repossess the property of a service member or his or her dependent during that time, unless pursuant either to a court order or a servicemember's written waiver. You can contact us toll-free at 800-321-9637 if you have questions about your rights under SCRA.



Case ID: 230201333

EXETER-STANLEY-000077

# EXHIBIT 7

Case ID: 230201333

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number __NA__     Contract Number __NA__

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| GREENE<br>TRACY STANLEY<br>208 HUFFMAN STREET<br>WAYNESBURG, PA 15370 | | FREEDOM KIA<br>601 MARY JANE WOOD CIRCLE<br>MORGANTOWN, WV 26501 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| NEW | 2017 | KIA SPORTAGE L | KNDPMCAC7H7242008 | Personal, family, or household unless otherwise indicated below<br>☐ business   ☐ agricultural ___NA___ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ __2000.00__ is |
|---|---|---|---|---|
| 19.48 % | $ 19515.76 | $ 27761.60 | $ 47277.36 | $ 49277.36 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 656.63 | Monthly beginning |
| NA | NA | 07/02/2017 |

Or As Follows:

NA

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late. The maximum charge will be $ __30__ if you bought the vehicle primarily for personal, family, household, or agricultural use.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

Complete the following ONLY if a scheduled payment, other than the downpayment, is at least twice as large as the smallest earlier scheduled payment, other than the downpayment.
THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS.
AN INSTALLMENT OF $ __NA__ WILL BE DUE ON __NA__ . LARGER INSTALLMENTS WILL BE DUE AS FOLLOWS: __NA__

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1  Cash Price (including $ __1577.70__ sales tax) | | $27447.70 (1) |
| 2  Total Downpayment = | NA | |
| Trade-in | | |
| (Year)        (Make)        (Model) | | |
| Gross Trade-In Allowance | $ NA | |
| Less Pay Off Made By Seller* | $ NA | |
| Equals Net Trade In | $ NA | |
| + Cash | $ 1000.00 | |
| + Plus REBATE | $ 1000.00 | |
| (If total downpayment is negative, enter "0" and see 4I below) | $ 2000.00 (2) | |
| 3  Unpaid Balance of Cash Price (1 minus 2) | | $ 25447.70 (3) |
| 4  Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | |
| A  Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | |
| Life | $ NA | |
| Disability | $ NA | |
| B  Vendor's Single Interest Insurance Paid to Insurance Company | $ NA | |
| C  Other Optional Insurance Paid to Insurance Company or Companies | $ NA | |
| D  Optional Gap Contract | $ 750.00 | |
| E  Official Fees Paid to Government Agencies | | |
| to __DMV__ for __LIEN FEE__ | $ 24.00 | |
| to __DMV__ for __TEMPORARY TAG FEE__ | $ 3.00 | |
| to __NA__ for __NA__ | $ NA | |
| F  Government Taxes Not Included in Cash Price | $ NA | |
| G  Government License and/or Registration Fees | | |
| to __REG/LICENSE/TEMP TAG FEES__ | $ 60.90 | |
| Government Certificate of Title Fees | $ 51.00 | |
| H  Other Charges (Seller must identify who is paid and describe purpose.) | | |
| to __NA__ for Prior Credit or Lease Balance | $ NA | |
| to __1ST EXTENDED__ for __SRV CONTRACT NEW__ | $ 1298.00 | |
| to __FREEDOM KIA__ for __DOCUMENTARY FEE__ | $ 175.00 | |
| to __NA__ for __NA__ | $ NA | |
| to __NA__ for __NA__ | $ NA | |
| to __NA__ for __NA__ | $ NA | |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 2313.90 |
| 5  Amount Financed (3 + 4) | | $ 27761.60 (5) |

If "blank or "0", your indebtedness on the trade-in is to be paid by you.

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before __NA__ , __NA__ . SELLER'S INITIALS __NA__

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _____ Mos. _____

I want to buy a gap contract. Buyer Signs X _Tracy Stanley_

### NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale.** After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a portion of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _Tracy Stanley_   Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See back for other important agreements.**

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

| Buyer Signs X _Tracy Stanley_ | Date 06/02/17 | Co-Buyer Signs X _____ | Date NA |
|---|---|---|---|

Co-Buyers and Other Owners — A co-buyer is a person who signs the contract and is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs X _____ NA

Seller Signs __FREEDOM KIA__   Date __06/02/17__   By X _(signature)_   Title __F&I MGR__

Seller assigns its interest in this contract to __EXETER FINANCE CORP__ (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse   ☐ Assigned without recourse   ☐ Assigned with limited recourse

Seller __FREEDOM KIA__   By _(signature)_   Title __F&I MGR__

---

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**

☐ Credit Life:     ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:
Credit Life $ __NA__
Credit Disability $ __NA__
Insurance Company Name __NA__
Home Office Address __NA__

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**

☐ _____ Type of Insurance   Term _____
Premium $ __NA__
Insurance Company Name __NA__
Home Office Address __NA__

☐ _____ Type of Insurance   Term _____
Premium $ __NA__
Insurance Company Name __NA__
Home Office Address __NA__

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _____  _____
Buyer Signature    Date

X _____  _____
Co-Buyer Signature    Date

**THIS INSURANCE DOES NOT INCLUDE COVERAGE FOR YOUR LIABILITY FOR BODILY INJURY AND/OR PROPERTY DAMAGE CAUSED TO OTHERS.**

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance). If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ __NA__ and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**Returned Check Charge:** You agree to pay a charge of $25 if any check you give us is dishonored, except you will not have to pay this charge if a complaint for a warrant is delivered to magistrate court.

**EQUITY PROTECT**
Name of Gap Contract

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

### 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. Unless you provide us with evidence of the insurance coverage this contract requires, we may buy insurance at your expense to protect our interests in this vehicle. This insurance may, but need not, protect your interests. The coverage that we buy may not pay any claim that you make or any claim that is made against you in connection with the vehicle. You may later cancel any insurance we buy, but only after providing us with evidence that you have the insurance this contract requires. If we buy insurance for the vehicle, you will be responsible for the costs of that insurance, including the finance charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the total amount you owe. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own. The charge will be the premium of the insurance and a Finance Charge computed at the Annual Percentage Rate shown on the front of this contract.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

### 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may pay the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once subject to any right to cure that the law gives you (see below). Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have a right to cure.** If three things are true, the law gives you the right to cure your default. First, you must have bought the vehicle primarily for personal, family, household, or agricultural use. Second, your default must not be a failure to have the insurance this contract requires or otherwise protect and preserve the vehicle. Third, you must have previously received notice of your right to cure less than three times during this contract period. Any right to cure you have expires ten days after the date we send you the notice the law requires. If you cure your default in time, this contract will continue as though you had not defaulted.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you subject to any right to cure the law gives you. We may only take the vehicle if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows. You will pay the reasonable expenses we incur realizing on our security interest.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left (surplus), we will pay it to you, unless the law requires us to pay it to someone else. For example, we may be required to pay a lender who loaned you money and also took a security interest in the vehicle. If the money from the sale is not enough to pay the amount you owe, you must pay the rest to us, unless both of the following things are true: (i) you bought the vehicle primarily for personal, family, household, or agricultural use; and (ii) the balance you owed on this contract was $1,000 or less at the time we repossessed or you surrendered the vehicle. If both of these things are true, you will not owe the rest. If you owe the rest and do not pay it when we ask, we may charge you interest at the rate provided for in this contract until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

### 4. WARRANTIES SELLER DISCLAIMS.

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, household, or agricultural use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

### 5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

### 6. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

### 7. APPLICABLE LAW

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

EXETER-STANLEY 000035

# EXHIBIT 8

Case ID: 230201333

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

CONFIDENTIAL

Dealer Number _____ Contract Number _____

| Buyer Name and Address (including County and Zip Code) | Co-Buyer Name and Address (including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| LISA ANN BODNAR 116 SIEBERT RD PITTSBURGH PA 15237 ALLEGHENY | N/A | WRIGHT AUTOMOTIVE GROUP 11015 PERRY HWY WEXFORD PA 15090 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Mfg Gross Vehicular Weight | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2013 | GMC ACADIA | N/A | 1GKKVTKD1DJ140428 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $10000.00 |
|---|---|---|---|---|
| 21.00 % | $ 8543.49 | $ 13403.31 | $ 21946.80 | $ 31946.80 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| | | Monthly beginning |
| 60 | 365.78 | 12/22/2016 |
| N/A | | |

Or As Follows: N/A

**Late Charge.** If payment is not paid in full within 10 days after it is due, you will pay a late charge. If the vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late. Otherwise, the charge will be 2% of the part of the payment that is late.
**Prepayment.** If you pay off your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required payment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED (Seller may keep part of the amounts paid to others.)

1 Cash Price
| | | |
|---|---|---|
| Vehicle | $ | 21588.00 |
| Accessories and Installation | $ | |
| Government Taxes | $ | 1511.16 |
| Vehicle Delivery | $ | |
| to N/A for N/A | $ | N/A |
| to N/A for N/A | $ | N/A |
| to N/A for N/A | $ | N/A |
| to N/A for N/A | $ | N/A |
| | $ | 23099.16 (1) |

2 Total Downpayment =
| | | |
|---|---|---|
| Trade-in N/A (Make) (Model) | | |
| Trade-in N/A (Year) (VIN) | | |
| Gross Trade-in Allowance | $ | |
| Less Pay Off Made by Seller | $ | |
| Equals Net Trade In | $ | |
| + Cash | $ | 10000.00 |
| + Other | $ | |
| (If total downpayment is negative, enter "0" and see 4H below) | $ | 10000.00 (2) |

3 Unpaid Balance of Cash Price (1 minus 2) $ 13099.16 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
| | | |
|---|---|---|
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies | | |
| Life  Term N/A  N/A | $ | N/A |
| Disability  Term N/A  N/A | $ | N/A |
| B Other Optional Insurance Paid to Insurance Company or Companies | | |
| (Describe) N/A | $ | N/A |
| (Describe) N/A | $ | N/A |
| C Official Fees Paid to Government Agencies | | |
| to N/A for N/A | $ | N/A |
| to STATE OF PA for TEMP TAG | $ | 28.00 |
| D Optional Gap Contract | $ | N/A |
| E Government Taxes Not Included in Cash Price | $ | N/A |
| F Government License and/or Registration Fees | | |
| NOTARY 10.00/REG   41.00 | $ | 51.00 |
| G Government Certificate of Title Fees /ENCUMB FEE | | |
| (includes $ 24.00 government interest recording fee) | $ | 75.00 |
| H Other Charges (Seller must identify who is paid and describe purpose) | | |
| to N/A for Prior Credit or Lease Balance | $ | N/A |
| to WRIGHT AUTOMOTIV for DOC FEE | $ | 135.00 |
| to CVR for ONLINE REG FEE | $ | 15.15 |
| to N/A for N/A | $ | N/A |
| to N/A for N/A | $ | N/A |
| to N/A for N/A | $ | N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 304.15 (4) |

5 Amount Financed (3 + 4) $ 13403.31 (5)
6 Finance Charge $ 8543.49 (6)
7 Total of Payments-Time Balance (5 + 6) $ 21946.80 (7)

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the appropriate box below:**
### Optional Credit Insurance
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:
Credit Life $ N/A
Credit Disability $ N/A
Insurance Company N/A
Home Office Address $ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the Amount Financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under the contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life insurance or credit disability insurance provides. See the policies or certificates for coverage limits or other terms and conditions.

### Other Optional Insurance
☐ N/A
Type of Insurance N/A
Premium $ N/A  Term N/A
Description of Coverage N/A
Insurance Company N/A
Home Office Address N/A

☐ N/A
Type of Insurance N/A
Premium $ N/A  Term N/A
Description of Coverage N/A
Insurance Company N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

Buyer Signature _____  Date _____
X N/A
Co-Buyer Signature _____  Date _____
X N/A

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS.**

**Returned Check Charge.** You agree to pay the costs we actually pay to others if any check you give us is dishonored.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions if this is a part of this contract.
Term _____  N/A _____
Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Buyer Signs X *Lisa Bodnar*
Co-Buyer Signs X _____

## If you do not meet your contract obligations, you may lose the vehicle.

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A , Year N/A SELLER'S INITIALS N/A

## NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs X *Lisa Bodnar*  Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See back for other important agreements.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

**NOTICE TO BUYER. DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREUNDER.
Buyer Signs X *Lisa Bodnar*  11/07/16  Co-Buyer Signs X N/A  Date N/A

**You agree to the terms of this contract.** You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.
Buyer Signs X *Lisa Bodnar*  Date 11/07/16  Co-Buyer Signs X N/A  Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X _____  Address _____
Seller Signs *Wright Automotive Group*  Date 11/07/16  Title BUSINES

Seller _____ assigns its interest in this contract to _____ EXETER FINANCE CORPORATION (Assignee) under the terms of Seller's agreement(s) with Assignee.
WRIGHT AUTOMOTIVE GROUP
By _____  ☐ Assigned without recourse
☐ Assigned with recourse  ☐ Assigned with limited recourse
By _____  Title BUSINESS MANAGER

**ILAW** FORM NO. 553-PA-ARB REV. 12-16 ILS. WHITE PROVISION

ORIGINAL LIENHOLDER

©2014 The Reynolds and Reynolds Company. TO ORDER: www.reyrey.com or call 1.800.344.0996. Fax 1.800.531.9055. THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE MERCHANTABILITY, FITNESS FOR PURPOSE OR OTHERWISE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Case 2:23-cv-01395-AB   Document 1-1   Filed 04/12/23   Page 63 of 67

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, to the extent permitted by law you agree to repay the amount when we ask for it.

**c. Security interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our entire interest in the vehicle as well as yours. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we will buy insurance that covers your interest and our interest in the vehicle. We will tell you the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. You may owe late charges.** You will pay a late charge on each late payment as shown on the front. The term "heavy commercial motor vehicle" means any new or used motor vehicle, excluding a recreational vehicle, which is (i) a truck or truck tractor having a manufacturer's gross vehicular weight of thirteen thousand (13,000) pounds or more, or (ii) a semi-trailer or trailer designed for use in combination with a truck or truck tractor. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If you default and we have to go to court to recover the vehicle, you will pay the reasonable attorney's fees and court costs as the law permits. You will also pay any attorney's fees and court costs a court awards us.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may get it back by paying the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any other amounts lawfully due under the contract (redeem). Your right to redeem ends when we sell the vehicle. We will tell you how much to pay to redeem.

If we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and any other amounts due because you defaulted (reinstate). We will tell you if you may reinstate and how much to pay if you may.

If you are in default for more than 15 days when we take the vehicle, the amount you must pay to redeem or reinstate will also include the expenses of taking the vehicle, holding it, and preparing it for sale.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, or, at our option, reinstate, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it, as the law allows. Reasonable attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you may have to pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**h. Summary Notice Regarding Prepayment, Rebate of Finance Charge and Reinstatement: You may prepay all or part of the amount you owe under this contract without penalty. If you do so, you only have to pay the earned and unpaid part of the finance charge and all other amounts due up to the date of your payment. Unearned finance charges will not be rebated under this contract because there will never be any unearned finance charges to rebate. If you default and we repossess the vehicle, we may, at our option, allow you to get the vehicle back before we sell it by paying all past due payments, late charges, and expenses (reinstate).**

## 4. WARRANTIES SELLER DISCLAIMS

The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. The following paragraph also does not apply at all if you bought the vehicle primarily for personal, family, or household use.

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

## 5. Used Car Buyers Guide.
**The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

## 6. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 7. RIGHT TO RECEIVE STATEMENT OF ACCOUNT

Upon your request, we will provide you a statement of account that shows information about your payment history including any charges and credits to your account. It will also show amounts that are due at the time of your request and information regarding future payments. We will provide you one statement of account at no cost. We may charge you our reasonable costs for any additional statements requested, as the law allows. Your right to receive a statement of account ends one year after termination of the contract.

## 8. ADDITIONAL RIGHTS

**If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.**

## 9. APPLICABLE LAW

Federal law and the law of the state of the Seller's address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Form No. 553-PA-ARB 12/14                                                                            EXETER-BOONAR-000028

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| BODNER ETAL | February Term 2023 |
|---|---|
| VS | No. 01333 |
| EXETER FINANCE, LLC | |

DOCKETED

MAR - 1 2023

R. POSTELL
COMMERCE PROGRAM

## *CLASS ACTION INITIATION ORDER*

**AND NOW**, Wednesday, March 01, 2023, plaintiffs having commenced a Class Action which has been assigned to the Honorable RAMY DJERASSI, it is hereby **ORDERED** as follows:

1.  All parties are directed to appear via Zoom for a Case Management Conference on 12-MAY-2023 at 10:30 AM.  The Commerce Case Management Zoom link is available on the Court's Website at: https://www.courts.phila.gov/remote-hearings/

2.  Five (5) days prior to the Zoom Conference, all parties are required to electronically file with the court, and to serve upon all opposing counsel and opposing parties who cannot be electronically served by the court, a fully completed Commerce Case Management Memorandum.  A copy of the Commerce Case Management Memorandum form may be found at:

    https://www.courts.phila.gov/pdf/forms/civil/01-111-Case-Management-Conference-Memorandum-Commerce.pdf

3.  To electronically file the Commerce Case Management Memorandum, access the "Existing Case" section of the court's electronic filing system.  Select "Conference

RCP74608RCP74608h (Rev 7/15/21)

CLCDS-Bodner Etal Vs Exeter Finance, Llc



23020133300007

Submissions" as the filing category.  Select "Management Memorandum" as the filing type.

4.   In the Case Management Memorandum, counsel should describe in detail: the substance of plaintiffs' claims and defendants' defenses; whether certification or merits discovery should occur first; any procedural complications the parties anticipate may occur, such as venue or jurisdictional disputes, joinder of additional parties, requests for bifurcation, etc.; and any other information that will assist the Case Manager to determine how much time the parties need to conduct discovery during the certification and/or merits portion of the case.

5.   Counsel shall also be prepared to discuss with the Case Manager at the Zoom Conference all of the issues listed in Paragraph 4 above.

6.   Plaintiffs' counsel shall serve a copy of this Order upon all unrepresented parties and any attorney entering an appearance subsequent to the date of issuance of this Order.

*BY THE COURT:*

*RAMY DJERASSI, J.*
*TEAM LEADER*
*CLASS ACTION PROGRAM*

**STRADLEY RONON STEVENS & YOUNG, LLP**
By:    Andrew K. Stutzman, Esq. (P.A. I.D. No. 72922)
        Joseph Kelleher, Esq. (PA ID No. 202786)
        Christopher A. Reese, Esq. (PA ID No. 308939)
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
(215) 564-8120 (fax)

*Filed and Attested by the
Office of Judicial Records
03 APR 2023 09:30 am
S. GILLIAM*

*Attorneys for Defendant
Exeter Finance LLC*

| | |
|---|---|
| LISA BODNAR AND TRACY STANLEY, individually and on behalf of all others situated, <br> Plaintiffs, <br><br> v. <br><br> EXETER FINANCE LLC f/k/a EXETER FINANCE CORP., <br> Defendant. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY <br><br> CIVIL TRIAL DIVISION FEBRUARY TERM, 2023 <br><br> Case No. 01333 |

## ENTRY OF APPEARANCES

Kindly enter the appearances of Andrew K. Stutzman, Joseph T. Kelleher, and

Christopher A. Reese as counsel for Defendant, Exeter Finance LLC, in this matter.

*/s/Andrew K. Stutzman*
Andrew K. Stutzman (PA ID No. 72922)

*/s/Joseph T. Kelleher*
Joseph Kelleher (PA ID No. 202786)

*/s/Christopher A. Reese*
Christopher A. Reese (PA ID No. 308939)

Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
T: (215) 564-8000
F: (215) 564-8120
astutzman@stradley.com
jkelleher@stradley.com
creese@stradley.com

Dated: April 3, 2023

*Attorneys for Defendant Exeter Finance LLC*

Case ID: 230201333

**STRADLEY RONON STEVENS & YOUNG, LLP**
By:    Andrew K. Stutzman, Esq. (P.A. I.D. No. 72922)
        Joseph Kelleher, Esq. (PA ID No. 202786)
        Christopher A. Reese, Esq. (PA ID No. 308939)
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000                                              *Attorneys for Defendant*
(215) 564-8120 (fax)                                     *Exeter Finance LLC*

| | |
|---|---|
| LISA BODNAR AND TRACY STANLEY, individually and on behalf of all others situated, Plaintiffs,<br><br>v.<br><br>EXETER FINANCE LLC f/k/a EXETER FINANCE CORP.,<br>Defendant. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL TRIAL DIVISION FEBRUARY TERM, 2023<br><br>Case No. 01333 |

## ENTRY OF APPEARANCES

I, Joseph T. Kelleher, hereby certify that on this date, I caused a true and correct copy of

the foregoing Entry of Appearances to be electronically filed via the Court's ECF system.  The

document is available for reviewing and downloading by all Attorneys of Record.


                                                    */s/ Joseph T. Kelleher*
                                                    Joseph T. Kelleher

Dated:  April 3, 2023